## Myers v. Pullman Company.

(Decided October 10, 1912.)

### Appeal from Kenton Circuit Court (Common Law and Equity Division).

1. Carriers—Sleeping Car Companies—Presumption as to Function of Agents—Liability for Wrong of Servants.—In the absence of proof, the presumption is that the functions of the ticket agent, who is also the ticket agent of the railroad company are limited to the sale, delivery and collection of the price of tickets, and his negligence, resulting in the loss of a passenger's effects, cannot be attributed to the sleeping car company.

2. Carriers—Sleeping Car Companies—Effects of Passenger Retained in His Possession—Liability for Negligence of Servants.—Sleeping car companies are not held to the liability of innkeepers, or to that of common carriers in intrastate transactions. Their undertaking with their patrons is to provide safety to such articles of baggage retained in their possession, as may reasonably be carried with them, to point of destination; and to prevent loss of such articles,. their servants and agents in charge of the car conveying the passenger, must exercise ordinary care.

3. Carriers—Sleeping Car. Companies—Limitation of Liability.—The liability of sleeping car companies for loss of articles retained in the possession of the carrier is limited to such as a traveler ordinarily takes with him on a journey, and to such reasonable sums of money as may be necessary for his traveling expenses, taking into consideration his condition in life and the surrounding circumstances.

4. Carriers—Contributory Negligence.—Where a passenger fails to board a car, while the agents and servants of the sleeping car company are, or ought to be, in a position to afford him a safe

ingress, but attempts to get on the train as it is moving, and is robbed while getting on the car, he was guilty of such contributory negligence as will defeat a recovery.

U. J. HOWARD, B. F. GRAZIANI for appellant.

MARTIN M. DURRETT for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Harvey Myers, a member of the Kenton County bar, brought suit against the Pullman Company for $500, the value of a diamond stud lost by him through theft, on March 28, 1908, while in the act of boarding a train at Hot Springs, Ark., for Shreveport, La. The record shows that the plaintiff, being unable to make direct connection to Shreveport, bought for himself railroad and sleeping car tickets to intervening points within the State of Arkansas. The train that was to convey him to his destination contained two sleeping cars, connected and attached to the rear, the property of the defendant, and their internal management entrusted to a conductor and porter, the agents and servants of defendant. Immediately upon the arrival of the train, plaintiff exhibited his ticket to the Pullman conductor, who assigned him space in the sleeping car second from the rear and directed the porter to take and deposit plaintiff's baggage in the car, which he did. Desiring to spend the time, before the train should leave, with his wife and daughter, who were then sojourning with him for a season at Hot Springs, he walked with them up and down the platform near the train. At signal for the train to depart, plaintiff hurriedly left his family to catch the train and found the entrance to his car impeded by three men, one of whom was on the steps, the others moving with the car holding to the brass railing on the sides of the vestibule door. He repeatedly urged them, and with emphasis, to allow him to get on the car, finally pushing and forcing himself past then into the inside. During these efforts to board the car, these men pressed closely around his person, the one on the steps passing or shoving his hand in front of plaintiff, then all three quickly left the car and disappeared. Plaintiff at once discovered that his diamond was missing from his tie, reported the loss to the Pullman conductor and directed him to stop the train, which

was done. Plaintiff thereupon left the train, hoping to apprehend the thief and recover the stolen diamond, but was unsuccessful. The Pullman conductor, when the matter was related to him, said to plaintiff: "This has been going on several weeks." Plaintiff testified that he also reported the matter to the ticket agent, describing the thief, and that the agent then said: "That fellow has been engaged in that sort of business here for weeks; he is here at every train; we don't actually see the thieves doing this work, but we know they are there and know they are doing it." At the trial, at the close of plaintiff's testimony, the court peremptorily instructed the jury to find for the defendant, which was done, and judgment entered dismissing the petition. Complaining that the trial court erred in so doing, plaintiff appealed.

Appellant asserted as the foundation of appellee's liability to him for his loss, that it, its agent and servants in charge of said car, were aware of the presence of thieves and of their purpose to commit depredations upon the passengers in said car, against which they negligently failed to give him protection and warning, and to prevent which he himself was in the exercise of due care.

It is well settled, both upon principle and authority, that sleeping car companies are not innkeepers, and cannot be held to the responsibilities of innkeepers, nor were they common carriers until expressly so declared to be by act of Congress of June 29, 1906, one of the several amendments to the Interstate Commerce Act, and they cannot be held to the responsibilities of common carriers in intrastate transactions. For ground and measure of their liability we must, therefore, look to the nature of their specific and implied engagements with their patrons. In the performance of their duty thus ascertained, the law imposes a care commensurate with such undertaking. For extra compensation, they provide advantages not to be had in the ordinary coaches. Their luxuriously appointed and completely manned cars are an offer to the traveler of, not only comfort and protection against fatigue, but also safety to his person and such personal effects retained in his possession as he might reasonably carry with him. The traveler, who accepts that offer and pays for the proposed accommodation to a given point, has the right to

expect that they will exert all reasonable efforts and make use of all reasonable means to preserve that condition of comfort and safety throughout the journey; and the law holds them to that degree of care. In Lewis v. New York, &c., Car Co., 143 Mass., 267, the rule of liability is thus stated:

"A sleeping car company holds itself out to the world as furnishing safe and comfortable cars, and, when it sells a ticket, it impliedly stipulates to do so. It invites passengers to pay for, and make use of, its cars for sleeping, all parties knowing that, during the greater part of the night, the passenger will be asleep, powerless to protect himself or to guard his property. He cannot, like the guest of an inn, by locking the door, guard against danger. He has no right to take any such steps to protect himself in a sleeping car, but, by the necessity of the case, is dependent upon the owners and officers of the car to guard him and the property he has with him from danger from thieves or otherwise."

"The law raises the duty on the part of the car company to afford him protection. While it is not liable as a common carrier or as an innkeeper, yet it is its duty to use reasonable care to guard the passengers from theft, and if, through want of such care, the personal effects of a passenger, such as he might reasonably carry with him, are stolen, the company is liable for it. Such a rule is required by public policy, and by the true interests of both the passenger and the car company, and the decided weight of authority supports it."

It is true that, at the time of the loss, appellant had his property in his custody, and that it was taken from him while he was awake and in full possession of his faculties. This fact, however, does not absolve appellee from the duty of exercising that degree of care to prevent the loss, as the circumstances of the loss required. If it could have reasonably anticipated the presence of pick-pockets at the time and place, when and where appellant was robbed, it would have been its duty to have used the means at its command to have prevented the theft. The law imposes no stricter duty.

In the case of Whicher v. Boston & Albany R. R. Co., 176 Mass., 275, which was an action for the loss of a handbag taken from a sleeping car during the day time, while plaintiff, a passenger thereon, was temporarily in the smoking compartment of the car, the defendant was

held only to reasonable care to prevent the loss, the court saying:

"The principles of law which govern these cases we considered to be well settled. In the first place, neither a railroad company, a steamboat company, a sleeping car company, nor a palace car company owes to a passenger in regard to baggage the duty imposed by law on carriers or innkeepers, where the passenger keeps the baggage in his own custody and control. The only obligation imposed upon them is that of exercising reasonable care, and they are liable only when the loss is due to the negligence or misconduct of the servants or agents of the carrier. Tower v. Utica, Etc., R. R. Co., 7 Hill, 47; Henderson v. Louisville, Etc., R. R. Co., 123 U. S., 61; Illinois Central R. R. Co. v. Handy, 63 Miss., 609. * * * It is obvious that a higher degree of care is required during the night, when a passenger is asleep, than is required in the day time, when he can look after his own effects. Whitney v. Pullman Palace Car Co., 143 Mass., 243."

In the case of Pullman Palace Car Co. v. Gavin, 93 Tenn., 53, in which plaintiff sought a judgment for the loss of $150 in money, stolen from his berth while he was asleep, the court said:

"The law is well settled that a sleeping car is not a common carrier. They differ radically in the kind of service rendered the public. The contract of the sleeping car company is to lodge the passenger, while that of the carrier is to carry him. Sleeping car companies are not liable as innkeepers for the loss or theft of articles from a guest, for the reason that the passenger on a sleeping car retains the exclusive personal possession and control of his valuables. The company does not undertake to receive the property of the guest, but expressly declines to do so, and, for this reason, is absolved from the liability of an innkeeper. It has been so difficult to define the precise legal status of this class of public servants, and the measure of their accountability, that they have been facetiously characterized as "flying nondescripts." It is, however, universally recognized by the courts that it is the duty of a sleeping car company to maintain a careful and continuous watch over the interior of the car while the berths are occupied by sleepers. If the property is stolen by a fellow passenger or by an intruder on the train, in consequence

of the failure of the company to maintain this careful and continuous watch, the company will be liable for its value. Carpenter v. New York, Etc., R. R. Co., 124 N. Y., 58.''

While sleeping car companies are answerable for ordinary negligence resulting in loss, liability extends only to such reasonable articles of baggage as a traveler usually takes with him on a journey and to such reasonable sum of money as may be necessary for his traveling expenses, taking into consideration his condition in life and the surrounding circumstances. Hampton v. Pullman Palace Car Co., 42 Mo. App., 134.

The negligence of appellee, if any, in respect to the loss of appellant's diamond, was that of the ticket agent or conductor or porter in charge of its car. Appellant was the only witness introduced at the trial, and he testified that the ticket agent of appellee was also the ticket agent of the railroad company. He failed to testify to any fact that, directly or by inference, showed that the ticket seller, as agent of appellee, exercised any control over the depot or grounds or approaches thereto, or had the power to remove objectionable persons therefrom. In the absence of proof, we must presume that the functions of the ticket agent of appellee were limited to the sale, delivery and collection of the price of tickets. He was not charged with the custody of the persons or property of the patrons of appellee, and he was under no obligation to warn them of the presence of thieves or of their unlawful purposes. Besides, there was nothing in the personal appearance of appellant to suggest to the ticket seller the propriety or necessity of such warning. Commanding in stature, intelligent, alert and betraying the mannerisms of an extensive traveler, the ticket agent was justified in the belief that appellant could, equally as well as he, anticipate the presence and purposes of such characters, and in fact, that he would be at no disadvantage in any situation save when confronted by a superior physical force. If there was any negligence on the part of the ticket seller, it is not, and cannot be attributable to appellee.

The diamond which was worn by appellant for his adornment, at the time of its loss, was of a value suitable to his station in life. The conductor and porter, appellee's agents in charge of its car, were chargeable with the duty of exercising reasonable care to prevent its

loss. Neither of them saw, or was in a position to see, the actual robbery. The fact that they failed to recognize the men about the entrance of the car, if they saw them, as belonging to a well recognized criminal class, cannot be regarded as negligence. There was nothing in their appearance to betray their nefarious business. That they failed to post on the car notices conveying the information of the presence of thieves, or to proclaim that fact through a megaphone, was not negligence. They did not know of their presence, and were no more chargeable with that knowledge than appellant himself. The fact that the conductor said to appellant at the time, "this has been going on several weeks" did not import a knowledge of the presence of these thieves who were guilty of the robbery. It is a matter of common knowledge that pick-pockets and diamond snatchers infest hotels, trains, sleeping cars, depots in large cities and at watering places, especially at arrival and departure of trains, and crowds generally. They are practicable enough to seek valuables where they may be found. "For wheresoever the carcass is, there will the eagles be gathered together." Such announcement would not have added to the knowledge that was then, or ought to have been in the possession of appellant.

From the time appellant was assigned to a section in the car up to the time immediately before it started, the servants of appellee were at their post of duty and prepared to afford him an unimpeded entrance. Had he, during that interval, boarded the car, the loss would probably not have been sustained. A natural and commendable devotion to his family caused him to linger beyond the time of a reasonably safe ingress. The carrier having afforded him reasonable and ample opportunity for safe ingress, and he failing to avail himself of that opportunity, but waiting and attempting to board the train as it was moving, providing the pick-pockets with the only opportunity they would have had to relieve him of his valuables, it would not be consonant with any rule of law or any proper idea of justice to hold appellee liable in damages for the loss of this diamond.

The manner of the robbery was so explicitly set forth by appellant in his testimony as to leave no doubt as to how the loss occurred. There was no duty, therefore, upon appellee to explain the circumstances of the loss. There was a total failure of testimony showing culpable

negligence on the part of appellee, or its agents or servants, in consequence of which appellant lost his diamond. We, therefore conclude that the trial court properly instructed the jury to find for appellee, and that the judgment predicated thereon was correct.

Judgment affirmed.